UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

James Cramton,
    Plaintiff

vs

Siemens Energy & Automation, Inc.,
    Defendant

Case No. C-1-08-579
(Hogan, M.J.)

**ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 22), Plaintiff's Memorandum Contra to Defendant's Motion for Summary Judgment (Doc. 23), and Defendant's Reply thereto (Doc. 25).

**BACKGROUND**

Plaintiff, James Cramton, began working for Defendant, Siemens Energy & Automation, Inc., at its Norwood, Ohio facility on February 23, 1995. (Doc. 21, Deposition of James Cramton at 5-6, 37). Defendant manufactures electric motors at this plant. The bargaining unit employees at the Norwood plant are represented by IUE-CWA Local 765 ("the Union"). (Id. at 36). Plaintiff was a member of the Union during the entire period of his employment with Defendant. During the course of Plaintiff's employment, he worked in the Receiving and Shipping Departments under several different supervisors. (Cramton Dep. at 37, 42-44).

Plaintiff's work record is replete with examples of inappropriate behavior and hostile outbursts. In May 2001, Plaintiff was counseled by Defendant regarding his behavior at work involving incidents in which three Union co-workers complained about him. (Doc. 22, Cramton Dep., Ex. K). One of these co-workers claimed that Plaintiff "grabbed my toolbox and thrown it (sic) out in the aisle after hitting a crate of parts." (Id. at 88-89). Another coworker stated that Plaintiff "smarted off" to him. (Id.). Plaintiff contends that he was "kidding around" with this employee and that this employee was upset with him. (Id. at 82-83). Defendant advised Plaintiff he was in violation of the Company's harassment policy and its Plant Shop Rules. (Cramton Dep., Ex. K).

In March 2002, Plaintiff received a written warning for another incident with a different co-worker. (Cramton Dep., Ex. N). Plaintiff lost his temper and began yelling and cursing at the

co-worker because the co-worker had placed a motor in a location which made it difficult for Plaintiff to move some other materials. (Cramton Dep. 107-08). The written warning Plaintiff received at the time stated, "Jim did not deny his part in the incident nor did he implicate Tony or anyone else." (Id. at 109; Ex. N).

In April 2002, Plaintiff was disciplined again for a series of incidents which actually occurred in 2000, but of which Defendant became aware in 2002. (Id. 112; Dep. Ex. O). A group of employees had signed a petition against Plaintiff in which they stated that, when they came into his work area, he would curse at them and harass them. Plaintiff received a four-hour unpaid suspension as a result of this behavior. (Id. at 53,118; Dep. Ex. O).

In April of 2004, Plaintiff was suspended and required to attend behavioral counseling due to insubordination, a refusal to perform an assigned job, and "loud, boisterous, abusive, and profane [language] when talking to his supervisor." (Cramton Dep., Ex. Q). Plaintiff concedes that he refused to perform a task requested by his supervisor and that he also raised his voice. (Id. at 129-31). However Plaintiff denies that he was insubordinate. (Id.). Plaintiff received a "Letter of Understanding" as a result of this incident which stated that "any future unprofessional outburst on Mr. Cramton's part or violation of the plant's shop rules will result his immediate termination." (Cramton Dep., Ex. Q). Plaintiff signed the Letter of Understanding, as did Defendant and the president of Plaintiff's Union, which agreed not to grieve or arbitrate Plaintiff's suspension. (Cramton Dep. at 139-40; Dep. Ex. Q). Plaintiff agreed to meet with a behavioral health counselor as part of this Agreement. He admitted to this counselor he had problems with his temper and language. (Id. at 139). Upon completion of a three-week suspension, Plaintiff was released to return to work by his counselor. (Cramton Dep. at 148; Ex. A). Plaintiff admits that his age played no part in the counseling, warnings or suspensions he received from Defendant in 2001, 2002 and 2004. (Cramton Dep. at 51, 111, 156-157,240-41).

The events which formed the basis for Plaintiff's termination occurred in January 2007. (Cramton Dep., Ex. V). According to Plaintiff's co-worker, on January 18, Plaintiff asked him, "where the hell have you been" and then "gave me hard time about the rate at which I was clearing motors for shipping." (Doc. 22, Ex. A, Cramton Dep. 159-60; Ex. B, Declaration of Larry McIntosh). McIntosh reported the incident to Plaintiff's supervisor, Jerry Butler. (Doc. 22, Ex. B, McIntosh Decl. ¶ 3). Plaintiff claims that he was "teasing" McIntosh and that McIntosh became angry with him. (Cramton Dep. at 166-69, 173). Plaintiff admits Butler spoke to him about the incident and instructed him not to "mess" with McIntosh any more. (Cramton Dep. at 199-200). Plaintiff apologized to McIntosh and claimed he was just "joking." (Cramton Dep. at 201). Butler warned Plaintiff that, if he continued to behave in this manner, he would likely lose his job. (Doc. 22, Ex. C, Declaration of Jerry Butler ¶ 4).

On January 19, 2007, Plaintiff was involved in another altercation with a co-worker, a supervisor and a Union steward. (Cramton Dep. at 203-05). A disagreement arose over the controls used to operate a crane, which Plaintiff's co-worker was holding. Plaintiff admits he "grabbed them" from the co-worker. (Id.). Supervisor, Gerald Paruma, attempted to resolve the

2

dispute and states that when he arrived in the area, Plaintiff was shouting that he "f**king needed the crane." (Cramton Dep. at 207, 208; Ex. D, Declaration of Gerald Paruma ¶ 3). Paruma told Plaintiff that he needed to act professionally, at which point Plaintiff cursed at Paruma and stated that he was "not his supervisor" and "I don't f**king report to you." (Doc. 22, Ex. D, Paruma Decl. at ¶ 4). Paruma immediately reported the incident to Plaintiff's supervisor and his manager, Strall. (Id.). According to Paruma, "Mr. Cramton was insubordinate and acting unprofessionally towards a management employee." (Doc. 22, Ex. D, Paruma Decl. ¶ 6). Plaintiff admits raising his voice with Paruma and also testified that he told him, "Gerald, you need to go back up there where you belong. Stay up there and leave me alone." (Cramton Dep. at 208, 214). Shortly following this incident, Plaintiff's union steward approached him and informed him that he was trying to save Plaintiff's job, to which Plaintiff responded that he "was a piss poor union steward." (Id. at 217, 218).

An investigation was initiated by Amy Brown, the Norwood facility's Human Resource Consultant, to determine if Plaintiff should be disciplined or fired. (Doc. 22, Ex. E, Declaration of Amy Brown ¶ 13). She interviewed various employees, including, Mr. McIntosh, Mr. Paruma and Mr. Butler. All confirmed these incidents. (Id.; Ex. B, McIntosh Decl. ¶ 4; Ex. C, Butler Decl. ¶ 6; Ex. D, Paruma Decl. ¶ 6). While investigating these incidents, Brown also learned that, two weeks earlier, Plaintiff had thrown a hammer at a co-worker. (Id., Ex. E, Brown Decl. ¶ 15). Brown talked to the co-worker, David Johnson, who confirmed the veracity of this report. (Id.; Ex. F, Declaration of David Johnson ¶ 4). Mr. Johnson stated that he argued with Plaintiff earlier in January regarding the material placement on the plant floor. (Id., Ex. E., Brown Decl. ¶ 15). As he was climbing back onto his fork truck, he saw a hammer fly through the air towards him. (Id.). Johnson stated that when he turned, he saw Plaintiff staring at him and saw him retrieve the hammer. (Id.). Johnson further stated that he was afraid of Plaintiff, whom he described as having a bad temper and being frequently moody. (Id., Ex. F, Johnson Decl. ¶ 4; Ex. E, Brown Decl. ¶ 15). Apparently, Johnson did not report the incident to Human Resources when it occurred because he felt he would not be believed because he was a new employee and Plaintiff had been with the Company for several years. (Id., Ex. F, Johnson Decl. ¶ 5). He also believed that Plaintiff was friends with some of the managers. (Id.). However, another employee, David Lyttle, witnessed the incident. Brown interviewed Lyttle who stated that he saw Plaintiff throw a hammer at Johnson as he was getting on the fork truck to drive away. (Id., Ex. G, Declaration of David Lyttle ¶ 3). When Brown interviewed Plaintiff, he admitted that he threw the hammer, however, he claimed it was a joke. (Id., Ex. E, Brown Decl. ¶ 16). As a result, Brown immediately suspended Plaintiff. (Id.). Plaintiff subsequently gave an affidavit to the National Labor Relations Board in which he stated that he "flipped a hammer towards the forklift" that Johnson was driving. (Doc. 22, Ex. A, Cramton Dep. Ex. S). He further admitted in his NLRB affidavit that he was cursing during this incident with Johnson. He maintained that he was "joking around" with Johnson. (Id., Ex. A, Cramton Dep. Ex. S).

Defendant's Plant Shop Rules prohibit threatening, intimidating and coercing co-workers (Rule19), misusing Company property (Rule 17), and violating safety rules (Rule 24). (Doc. 22, Ex. E, Brown Decl. ¶ 7; Ex. A., Cramton Dep. 69-70). Violation of certain rules, including

3

Rules 17, 19 and 24, can result in immediate termination. (Id., Ex. E, Brown Decl. ¶ 7; Ex. E, Brown Decl. Ex. 3). The plant rules also prohibit horseplay and throwing objects. (Id., Brown Decl. at ¶ 8; Brown Decl. Ex. 4) Plaintiff testified that he was aware of these rules and that he was required to follow such. (Cramton Dep. at 69-70). Plaintiff further acknowledged that he was required to follow Defendant's violence-free workplace policy, which prohibits intimidation and threats of violence. (Doc. 22, Ex. A, Cramton Dep. 73-74). Failure to comply with this policy can also result in termination. (Id., Ex. E, Brown Decl. ¶ 7).

After completing her investigation, Brown consulted with Plaintiff's supervisor and Diane Donnarumma, a Human Resources official, at Defendant's corporate headquarters. They jointly decided to terminate Plaintiff's employment for violations of the Plant Shop Rules and Violence Free Workplace policy. Plaintiff was notified in writing of his termination on February 2, 2007. (Doc. 22, Ex. E, Brown Decl. ¶ 17). Plaintiff's Union filed a grievance challenging his termination and a third step grievance meeting/hearing was held. (Id., Ex. A, Cramton Dep. Exs. S, W). Union officials, plant management, human resources and Plaintiff all participated. (Id.). During this hearing, Plaintiff admitted that he threw a hammer at Johnson. (Doc. 22, Ex. H, Declaration of Wayne Cupp ¶ 3). The Union subsequently withdrew Plaintiff's grievance and chose not to take his claim to arbitration. (Id., Ex. A, Cramton Dep. Ex. S). Plaintiff then filed an Unfair Labor Practice charge with the National Labor Relations Board against the Union for dismissing his grievance[1]. (Id., Ex. A, Cramton Dep. Ex. T). The NLRB dismissed Plaintiff's charge finding "insufficient evidence of violation." (Ex. E, Brown Decl. ¶ 18; Ex. A, Cramton Dep. Ex. T).

The collective bargaining agreement ("CBA"), to which Defendant and the Union are parties, contains a grievance and arbitration provision. (Doc. 22, Ex. A, Cramton Dep. Ex. D; Ex. E, Brown Decl. ¶ 9). A grievance is defined "any controversy . . . between the company and employees covered by this agreement, as to any matter concerning compliance with the provision of this agreement." (Id., Ex. E, Brown Decl. ¶ 10). Under the CBA, Defendant may only discharge employees for "cause." The CBA also has a nondiscrimination provision requiring Defendant to apply the agreement fairly and without regard to characteristics of employees, including their age. (Id., Ex. E, Brown Decl. ¶ 10).

## OPINION

A party may move for summary judgment on the basis that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law. In response to a summary judgment motion properly supported by evidence, the non-moving party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989).

---

[1] According to the Union's Business Agent, Harry Bogan, Plaintiff "had one of the worst records he ever saw . . . and he was not going to waste the Union's time." (Doc. 22, Ex. A, Cramton Dep. Ex. T).

4

Conclusory allegations, however, are not sufficient to defeat a properly supported summary judgment motion. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990). The non-moving party must designate those portions of the record with enough specificity that the Court can readily identify those facts upon which the non-moving party relies. *Karnes v. Runyon*, 912 F. Supp. 280, 283 (S.D. Ohio 1995)(Spiegel, J.). "[A]fter a motion for summary judgment has been filed, thereby testing the resisting party's evidence, a factual issue may not be created by filing an affidavit contradicting [one's own] earlier deposition testimony." *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1352 (6th Cir. 1991).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249-50. In so doing, the trial court does not have a duty to search the entire record to establish that there is no material issue of fact. *Karnes*, 912 F. Supp. at 283. *See also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989); *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988). The inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 249-50.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a *prima facie* case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Plaintiff claims that he was discharged from his employment without just cause in violation of O.R.C. § 4112.14. Defendant argues that Plaintiff's claim is barred because he had an opportunity to arbitrate his discharge and failed to do so. O.R.C. § 4112.14 (C) provides that a cause of action under § 4112.14 "shall not be available in the case of discharges where the employee has available to the employee the opportunity to arbitrate the discharge or where a discharge has been arbitrated and has been found to be for just cause." An "opportunity to arbitrate" means that Plaintiff "had access to an arbitration procedure." *York v. A.K. Steel Corp.*, No. C-1-04-250, 2005 WL 3338696, at * 7 (S.D. Ohio Dec. 8, 2005)(finding employees have opportunity to arbitrate when arbitration is provided under a collective bargaining agreement).

It is undisputed that the CBA in the present case contained an arbitration provision. Plaintiff contends that he did not have an opportunity to arbitrate, however, because the Union refused to arbitrate his discharge. However, the Union's refusal to arbitrate does not negate the fact that the opportunity to arbitrate was available to Plaintiff. Under O.R.C. § 4112.14, an exception to 4112.14(C)'s limitation exists with respect to "discriminatory, dishonest, arbitrary, or perfunctory" conduct on the part of the union representing the discharged employee. In such a case, a plaintiff may bring suit against both his union and his employer. *See Proffitt v. A.K. Steel Corp.*, Case No. C-1-03-471, 2006 WL 212074 at * 11 (S.D. Ohio Jan. 25, 2006)(citing *Sutterlin v. Mansfield Plumbing*, No. 00COA0139, 2001 WL 310633 at *1 (Ohio Ct. App. Mar. 26, 2001)). Plaintiff has not asserted a claim for breach of duty by the Union in the present action.

5

As such, Plaintiff's claim for age discrimination under O.R.C. § 4112.14 is prohibited. O.R.C. § 4112.14(C); *see also Sutterlin*, 2001 WL 310633 at *1-2. Accordingly, Defendant's Motion for Summary (Doc. 22) is **GRANTED**. Plaintiff's Complaint is **HEREBY DISMISSED** and this case is **TERMINATED** upon the Court's docket.

IT IS SO ORDERED.

Date: 8/17/09

Timothy S. Hogan
United States Magistrate Judge

C:\Documents and Settings\hillaw\Local Settings\Temp\notesC079F1\cramton.msj.wpd